USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/14/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                        :

THE ART & ANTIQUE DEALERS LEAGUE    :
OF AMERICA, INC., et al.,                       :
                           Plaintiffs,    :           18 Civ. 2504 (LGS)
                                          :
                -against-             :           **OPINION AND ORDER**
                                          :

BASIL SEGGOS,                               :
                             Defendant. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiffs The Art and Antique Dealers League of America, Inc. (the "Dealers League")

and The National Antique and Art Dealers Association of America, Inc. (the "Dealers

Association") bring this action against Defendant Basil Seggos, the Commissioner of the New

York State Department of Environmental Conservation ("DEC"). Plaintiffs challenge the

constitutionality of New York State Environmental Conservation Law § 11-0535-a (the "State

Ivory Law") and DEC licenses issued pursuant to the State Ivory Law. Plaintiffs move for

summary judgment, seeking (1) a declaratory judgment that the State Ivory Law is

unconstitutional and therefore void and (2) a permanent injunction preventing DEC from

enforcing the State Ivory Law. Defendant and Intervenors The Humane Society of the United

States, Center for Biological Diversity, National Resources Defense Council, Inc. and Wildlife

Conservation Society cross-move to dismiss the Third Amended Complaint (the "TAC") for

failure to state a claim under Rule 12(b)(6).[1] For the reasons discussed below, Defendant's and

Intervenors' cross-motions to dismiss are GRANTED in part and DENIED in part, and

Plaintiffs' motion for summary judgment is DENIED without prejudice to renewal.

---

[1] On July 9, 2018, the Court granted Intervenors' motion to intervene pursuant to Federal Rule of
Civil Procedure 24.

# I. BACKGROUND

The facts below are taken from the TAC, documents attached to or integral to the TAC and documents susceptible to judicial notice. *See TCA Television Corp. v. McCollum*, 839 F.3d 168, 172 (2d Cir. 2016); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). These facts are assumed to be true only for purposes of the motion to dismiss. *See Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018).

Plaintiffs are trade organizations representing art and antique dealers. Plaintiffs' members, some of whom have expertise in antique elephant and mammoth ivory from Africa and Asia, "have an economic and professional interest in, among other things, the purchase, sale, distribution or trading of antique elephant ivory . . . in intrastate commerce." Defendant is the Commissioner of DEC, a state agency tasked with protecting New York's natural resources and environment.

## A. Endangered Species Act

In 1973, Congress enacted the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* (the "ESA"). The ESA prohibits, among other things, the import and export of endangered species, 16 U.S.C. § 1538(a)(1)(A), and the sale, offering for sale, or movement of endangered species in interstate or foreign commerce, § 1538(a)(1)(D), (E). These restrictions are subject to certain statutory exemptions, including 16 U.S.C. § 1539(h), which provides that the above-referenced prohibitions do not apply to certain "antique articles" that are 100 years of age or older. § 1539(h)(1). Persons seeking to import such antique articles into the United States must first obtain a federal permit. § 1539(h)(2).

The ESA authorizes the Secretary of the Interior to "issue such regulations as he deems necessary and advisable to provide for the conservation of [endangered and threatened] species."

16 U.S.C. § 1533(d).  Pursuant to this authority, the Interior Department has promulgated regulations imposing special restrictions on trade in certain species, including African elephants.  *See* 50 C.F.R. § 17.40(e).  Under these regulations, interstate and foreign commerce in African elephant ivory is generally prohibited.  § 17.40(e)(3).  However, certain antique articles and items containing a *de minimis* quantity of ivory are exempt from this prohibition.  *Id.*

The ESA contains an express preemption clause, which sets forth the extent to which the ESA displaces state wildlife management laws.  16 U.S.C. § 1535(f).  The ESA's express preemption clause is quoted in full in the analysis below.

## B.  State Ivory Law

In 2014, New York State enacted the State Ivory Law, which provides that "no person shall sell, offer for sale, purchase, trade, barter or distribute an ivory article."  N.Y. ENVTL. CONSERV. LAW § 11-0535-a(2).[2]  This prohibition is subject to various exceptions, *see* § 11-0535-a(3), although these exceptions are more limited than those in the ESA.  For example, unlike the ESA, the State Ivory Law's antique article exception applies only to items that are less than twenty percent ivory by volume, § 11-0535-a(3)(a), and the State Ivory Law contains no exception for non-antique items containing only a *de minimis* quantity of ivory.  As a result, the State Ivory Law is more restrictive as to the sale of ivory than federal law.  DEC issues licenses and permits that authorize trade in ivory pursuant to the State Ivory Law's exceptions.  § 11-0535-a(3).  Trading in ivory without such a license or permit may constitute a Class D Felony, and can carry substantial civil penalties.  N.Y. ENVTL. CONSERV. LAW §§ 71-0924(4); 71-0925(16).

---

[2] The statute defines "ivory article" as "any item containing worked or raw ivory from any species of elephant or mammoth."  § 11-0535-a(1).

DEC has conceded that the State Ivory Law is preempted "as to any interstate or international commercial activities expressly authorized by" the antique and *de minimis* exceptions in the ESA and its implementing regulations. DEC will not deny a license for the sale of ivory from within New York to a buyer located outside of New York, provided the transaction fully complies with federal requirements. However, DEC will enforce the State Ivory Law insofar as *intrastate* commerce in ivory is concerned

The licenses issued by DEC restrict the licensees' advertisement and display of ivory products. Licensees may not "physically display for sale" any item not authorized for intrastate sale (i.e., not covered by one of the State Ivory Law's exceptions) (the "Display Restriction"). Such items *can* be displayed in advertisements, catalogues and online, provided that the licensee posts a notice next to the item's picture or description stating that the item "Cannot be purchased or Sold within New York State."

C.     Procedural History

On March 20, 2018, Plaintiffs filed this action, challenging the constitutionality of the State Ivory Law on preemption and First Amendment grounds. The parties agreed that the case involves purely legal issues, and therefore could be resolved by dispositive motions without the need for discovery. On July 5, 2018, Plaintiffs filed a motion for summary judgment. Defendants and Intervenors cross-moved to dismiss on August 3, 2018, and August 15, 2018, respectively.

On February 1, 2019, the Court granted Defendant's motion to dismiss for lack of subject matter jurisdiction. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, No. 18 Civ. 2504, 2019 WL 416330, at *1 (S.D.N.Y. Feb. 1, 2019). On March 21, 2019, Plaintiffs filed the TAC, which cured the standing deficiencies identified in the Court's February 1, 2019, dismissal order.

The TAC also clarified that Plaintiffs are challenging the State Ivory Law on preemption grounds only as applied to intrastate commerce. The parties have renewed their dispositive motions and stipulated that no supplemental briefing related to these amendments is necessary.

## II.    STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (citations omitted).  The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party.  *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citations omitted).

## III.    DISCUSSION

### A.    Preemption

"Under the Supremacy Clause, 'the Laws of the United States' are the 'supreme Law of the Land.'"  *Marentette v. Abbott Labs., Inc.*, 886 F.3d 112, 117 (2d Cir. 2018) (quoting U.S. CONST. art. VI, cl. 2).  "Congress therefore has 'the power to preempt state law' through federal legislation."  *Id.* (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)).  Although the Supremacy Clause "is not the source of any federal rights and . . . does not create a cause of action," *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1383 (2015) (citations omitted), "the Supreme Court has consistently recognized federal [equity] jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law."  *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016); *accord Coalition for Competitive Electricity, Dynegy Inc. v. Zibelman*, 272 F. Supp. 3d 554, 564 (S.D.N.Y. 2017) ("*Dynergy I*"); *see also Armstrong*, 135 S. Ct. at 1384 ("[I]f an individual claims federal law immunizes him from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908))).[3]

---

[3] In earlier pleadings, Plaintiffs asserted that it was unclear whether the State Ivory Law applies to interstate commerce.  The Second Circuit has said that where a plaintiff "dispute[s] the meaning of state law in preemption cases, they should proceed initially and promptly to state

"In general, three types of preemption exist: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Figueroa v. Foster*, 864 F.3d 222, 227–28 (2d Cir. 2017). The Court's analysis "is guided by the rule that the purpose of Congress is the ultimate touchstone in every pre-emption case." *Hughes v. Talen Energy Marketing, LLC*, 136 S. Ct. 1288, 1297 (2016); *accord Dynergy I*, 272 F. Supp. 3d at 567. The historic police powers of the states, including "[t]he states' authority to establish local prohibitions with respect to out-of-state wildlife," *see Cresenzi Bird Importers, Inc. v. State of N.Y.*, 658 F. Supp. 1441, 1447 (S.D.N.Y. 1987), "are not superseded [by federal law] 'unless that was the clear and manifest purpose of Congress.'" *Arizona*, 567 U.S. at 400 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

### 1. Express Preemption

Express preemption occurs "when Congress withdraws specified powers from the States by enacting a statute containing an express preemption provision." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014) (alterations omitted). "When a federal law contains an express preemption clause, we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993));

---

court for an authoritative construction of state law." *Fleet Bank, Nat'l Assoc. v. Burke*, 160 F.3d 883, 893 (2d Cir. 1998) (rejecting subject matter jurisdiction). Because the State now concedes that the State Ivory Law does not apply to federally-authorized interstate commerce and the TAC challenges the State Ivory Law only as applied to intrastate commerce, Plaintiff may proceed in federal court.

*accord ExteNet Systems, Inc. v. Village of Pelham*, No. 18 Civ. 5281, 2019 WL 1382650, at *5

(S.D.N.Y. Mar. 27, 2019).

The ESA's express preemption clause provides:

Any State law or regulation *which applies with respect to the importation or exportation of, or interstate or foreign commerce* in, endangered species or threatened species is void to the extent that it may effectively (1) permit what is prohibited by this chapter or by any regulation which implements this chapter, or (2) prohibit what is authorized pursuant to an exemption or permit provided for in this chapter or in any regulation which implements this chapter. This chapter shall not otherwise be construed to void any State law or regulation which is intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife. Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined.

16 U.S.C. § 1535(f) (emphasis added).

Section 1535(f) does not preempt the State Ivory Law, as applied to intrastate commerce

in ivory.  First, a purely intrastate sale does not constitute "importation or exportation" or

"interstate or foreign commerce."  § 1535(f).  Thus, by its plain terms, § 1535(f) forecloses any

notion that state laws regulating only intrastate commerce fall within its scope.  *See Whiting*, 563

U.S. at 594 (the "plain wording" of an express preemption clause "contains the best evidence of

Congress' preemptive intent").[4]

Second, the State Ivory Law does not "prohibit what is authorized pursuant to an

exemption or permit provided for in [the ESA] or in any regulation which implements [the

ESA]."  § 1535(f).  The ESA's antique article and *de minimis* exceptions do not authorize the

sale of ivory in *intrastate* commerce, because they are exceptions to prohibitions on the *import*

---

[4] That is not to say that intrastate conduct can never have an effect on interstate commerce.  But by its plain terms, § 1535(f) covers state laws that "appl[y] with respect to" interstate commerce -- not laws merely affecting or relating to such commerce.

*or export* of ivory and the sale or movement of ivory in *interstate or foreign* commerce.[5]  The

State Ivory Law, which regulates only intrastate commerce, therefore does not touch on -- much

less prohibit -- what is authorized by the ESA as to interstate and foreign commerce.

Plaintiffs argue that "a state law cannot prohibit intrastate what a federal permit or

exception otherwise allows interstate."  This argument is incorrect.  The cases that Plaintiffs cite

are not binding on this Court, and in any event are distinguishable.  Three of the cases cited by

Plaintiffs pertain to state restrictions on *interstate* or *import* commerce that directly impinged on

federal law.  *See Man Hing Ivory & Imports, Inc. v. Deukmajian*, 702 F.2d 760, 764 (9th Cir.

1983) (state law preempted to the extent it would prohibit federally-authorized import trade in

African elephant products); *H.J. Justin & Sons, Inc. v. Deukmejian*, 702 F.2d 758, 759 (9th Cir.

1983) (preemption clause applied in case involving Texas company seeking to sell products in

California); *Fouke Co. v. Brown*, 463 F. Supp. 1142 (E.D. Cal. 1979) (preemption clause applied

in case involving Delaware company seeking to sell alligator hides to California company).

Plaintiffs also cite an attorneys' fees opinion in *Conservation Force v. Porrino*, 16 Civ.

4124, 2017 WL 1488129 (D.N.J. Apr. 25, 2017), contending that the parties in that case entered

into a consent order pursuant to which "New Jersey conceded that exemptions under the ESA

preempted state law prohibiting . . . the intrastate sale of products made of African elephants."

The cited opinion does not support this assertion, and the Court takes judicial notice that the

consent order provides that the challenged law "is *not* preempted to the extent it prohibits any

activity for which a person or entity does not have federal authorization pursuant to an

---

[5] As noted above, 16 U.S.C. § 1539(h)(1) is an antique articles exception to 16 U.S.C. §
1538(a)(1), which restricts the import or export of endangered species, and the sale of movement
of such species in interstate or foreign commerce.  50 C.F.R. § 17.40(e)(3) contains *de minimis*
and antique article exceptions to a prohibition on interstate and foreign commerce in African
elephant ivory.

exemption or permit granted under the ESA or the ESA's implementing regulations."

*Conservation Force v. Porrino*, No. 16 Civ. 4124 (D.N.J. Aug. 29, 2016), Dkt. No. 18 at 3

(emphasis added).

Finally, Plaintiffs cite *Cresenzi Bird Importers, Inc. v. New York*, 658 F. Supp. 1441

(S.D.N.Y. 1987). In *Cresenzi*, the court held that federal licenses authorizing the plaintiffs "to

engage in business as an importer or exporter of wildlife" did not preempt a New York law

prohibiting intrastate commerce in wild birds, because the licenses did not constitute an

"exemption or permit" under the ESA's preemption clause. *See Cresenzi*, 658 F. Supp. at 1443,

1446; 16 U.S.C. § 1535(f) (preempting state laws that prohibit conduct "authorized pursuant to

an exemption or permit"). In reaching this conclusion, the court distinguished the plaintiffs'

licenses from permits issued under 16 U.S.C. § 1539(d), which Congress intended to give

preemptive effect. *Cresenzi*, 658 F. Supp. at 1446.

Plaintiffs contend that the court in *Cresenzi* "recognized that preemption [of the state

law] would occur if the plaintiff had a federal permit" issued under § 1539(d). But the court only

recognized that permits issued under § 1539(d) had preemptive effect, not that such permits

would necessarily preempt New York's law. In fact, the court suggested the opposite, citing

legislative history that evidenced Congress's intention *not* to preempt state laws prohibiting local

retail sales of wildlife. *See id.* at 1444. In any event, the court was not presented with, and did

not reach, the issue of whether a § 1539(d) permit would preempt the challenged law; it held

only that the plaintiffs' licenses were not permits or exemptions for purposes of § 1535(f), and

thus did not have preemptive effect. *See id.* at 1446.

Plaintiffs also quote dictum in *Cresenzi* suggesting that state restrictions on intrastate

commerce may *affect* interstate commerce. To the extent that Plaintiffs rely on this dictum to

support their contention that a state cannot prohibit intrastate what federal law authorizes interstate, their reliance is misplaced.  The court made this statement solely in the context of deciding the threshold issue of whether the state law "applie[d] with respect to" interstate commerce for purposes of § 1535(f).  *See* § 1535(f) (limiting the express preemption clause to state laws that "appl[y] with respect to" imports, exports and interstate and foreign commerce).[6] The court did not suggest that the state law's purported effects on interstate commerce gave rise to a *conflict* with the ESA, as would be required for § 1535(f) to preempt the state law.  As noted, the court suggested the opposite -- that state restrictions on local retail sales are outside of the scope of § 1535(f).  *See id.* at 1444.

In sum, because the State Ivory Law (1) does not regulate the "importation or exportation of" or "interstate or foreign commerce in" ivory, and (2) does not "prohibit what is authorized pursuant to an exemption or permit provided for in [the ESA] or by any regulation which implements [the ESA]," express preemption pursuant to § 1535(f) does not apply.

## 2. Field Preemption

"Under field preemption, a state law is preempted if 'Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law.'"  *Coalition for Competitive Electricity, Dynergy Inc. v. Zibelman*, 906 F.3d 41, 49 (2d Cir. 2018) (quoting *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*,

---

[6] *Cresenzi* did not reach the issue of whether laws regulating purely intrastate commerce "appl[y] with respect to" interstate commerce, but it did state in dictum that other courts have answered this question in the affirmative, citing *H.J. Justin*.  *Cresenzi*, 658 F. Supp. at 1445 n.2.  This dictum is unpersuasive.  The effect of an express preemption clause is determined by reference to its "plain wording," *Whiting*, 563 U.S. at 594, and no language in § 1535(f) indicates that it applies to state laws merely "affecting" interstate commerce.  Moreover, as explained above, *H.J. Justin* was a case relating to state restrictions on *interstate* commerce; it does not support the proposition that laws regulating purely intrastate commerce are within the ambit of § 1535(f).

489 U.S. 493, 509 (1989)) ("*Dynergy II*"); *see also Arizona v. United States*, 567 U.S. 387, 402 (2012) (stating that the "basic premise of field preemption" is that "States may not enter, in any respect, an area the Federal Government has reserved for itself"). "Where Congress occupies an entire field . . . even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Arizona*, 567 U.S. at 401. In other words, Congress must have intended to "confer a federal right to be free from any other" regulatory scheme than Congress's own. *See Murphy v. Nat'l Collegiate Athletic Assoc.*, 138 S. Ct. 1461, 1481 (2018).

Field preemption does not apply in this case because the ESA does not "occupy an entire field of regulation, leaving no room for the States to supplement federal law." *Dynergy II*, 906 F.3d at 49. Far from conferring "a federal right to be free from" other regulatory schemes, *Murphy*, 138 S. Ct. at 1481, the ESA expressly contemplates the existence of state wildlife management laws, and supersedes them only to the extent that they conflict with federal law. Section 1535(f) provides that the ESA does *not* void state laws "intended to conserve migratory, resident, or introduced fish or wildlife, or to permit or prohibit sale of such fish or wildlife," or that are more restrictive than the ESA's provisions regarding "the taking of an endangered species or threatened species."[7] 16 U.S.C. § 1535(f). State laws are preempted only "to the extent that [they] effectively (1) permit what is prohibited by [the ESA and implementing regulations], or (2) prohibit what is authorized pursuant to an exemption or permit provided for in [the ESA or implementing regulations]." 16 U.S.C. § 1535(f). These provisions are

---

[7] Plaintiffs argue that the "taking" provision does not save the State Ivory Law from preemption. To clarify, the Court does not find that these provisions apply to trade in ivory, only that they are relevant to ascertaining whether Congress intended to "occupy an entire field of regulation, leaving no room for the States to supplement federal law." *Dynergy II*, 906 F.3d at 49.

compelling evidence that Congress did not intend to oust states from their traditional role in regulating the wildlife trade, provided that such regulations do not conflict with federal law. *See also Cresenzi*, 658 F. Supp. at 1444 (referencing the ESA's legislative history, which "indicates that the purpose for limiting any preemptive effect was to leave the states free to protect wildlife by restricting sales of endangered species within their jurisdiction, so long as they did not block federally permitted commerce").

### 3. Conflict Preemption

"Conflict preemption arises 'where compliance with both state and federal law is impossible, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Dynergy II*, 906 F.3d at 49 (quoting *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1599 (2015)). "So long as a state is 'regulat[ing] production or other subjects of state jurisdiction, and the means chosen [are] at least plausibly . . . related to matters of legitimate state concern,' there is no conflict preemption 'unless clear damage to federal goals would result.'" *Id.* at 55 (2d Cir. 2018) (quoting *Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kan.*, 489 U.S. 493, 515 (1989)). Where, as here, Congress has legislated in a field traditionally occupied by the states, "[t]he presumption against federal law preempting state law is particularly strong." *Marentette*, 886 F.3d at 117. "In this context, the Court should only find preemption if the conflict between state law and federal policy is 'a sharp one.'" *Id.* at 117 (quoting *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007).

Conflict preemption does not apply in this case. DEC will not deny permits for interstate or foreign commerce in ivory, obviating any purported conflict between the ESA and the State

Ivory Law.[8]  To the extent that DEC enforces the State Ivory Law against merchants engaged in *intrastate* commerce in ivory, such commerce is outside of the scope of the ESA, for the reasons discussed above.  Thus, it cannot be said that "compliance with both state and federal law is impossible" or that the State Ivory Law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Dynergy II*, 906 F.3d at 49.

Even if it could be shown that intrastate restrictions on ivory sales have an indirect effect on federally-authorized interstate or foreign sales, an issue the Court need not reach, this would not warrant conflict preemption.  "[F]ederal law does not preempt state law under obstacle preemption analysis unless 'the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.'"  *Marentette*, 886 F.3d at 117 (quoting *In re MTBE*, 725 F.3d 65, 102 (2d Cir. 2013).  There is no basis to conclude that any of the State Ivory Law's purported interstate effects would undermine or obstruct the federal regulatory scheme. *Compare Northwest Central*, 489 U.S. at 516 (holding that state law regulating in-state gas production was not preempted by federal regulation of interstate rates, notwithstanding the state law's effect on such rates), *with Marentette*, 886 F.3d at 113–14, 118 (2d Cir. 2018) (state claims against company selling its products as certified "USDA Organic" preempted because the claims would undermine federal agency's decision to grant the certification, and thus obstruct federal certification scheme).  Moreover, the State Ivory Law's restrictions on the intrastate sale of wildlife are "plausibly related" to the regulation of trade in wildlife -- a proper state purpose and traditional subject of state jurisdiction.  *See Dynergy II*, 906 F.3d at 55 (alterations omitted).

---

[8] As discussed, Defendant has conceded that the State Ivory Law is preempted as applied to federally-authorized interstate and foreign commerce.  Plaintiffs are challenging the State Ivory Law only as applied to intrastate commerce.

As to Count I -- for a declaratory judgment and permanent injunction based on express and implied preemption -- Defendants' motion to dismiss is granted because it was not "the clear and manifest purpose of Congress" to preempt state laws restricting purely intrastate commerce in ivory. *See Arizona*, 567 U.S. at 400. Plaintiffs' motion for summary judgment on Count I is denied as moot.

### B.     First Amendment

Count II alleges that the State Ivory Law's permit requirement violates the First Amendment of the United States Constitution. Under the State Ivory Law, persons seeking to engage in the "sale, offering for sale, purchase, trading, bartering or distribution" of an ivory article must first obtain a license issued by DEC. § 11-0535-a(3). The Display Restriction in the license prohibits the "physical[] display for sale" of any item not authorized for intrastate sale under the State Ivory Law, even if the merchant is authorized under the ESA to sell the item in interstate or foreign commerce.

Restrictions on commercial speech are subject to intermediate scrutiny, as set forth in *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of N.Y.*, 447 U.S. 557 (1980). Under *Central Hudson*, a court must determine whether "(1) the speech restriction concerns lawful activity; (2) the City's asserted interest is substantial; (3) the prohibition directly advances that interest; and (4) the prohibition is no more extensive than necessary to serve that interest." *Vugo, Inc. v. City of New York*, No. 18-807, 2019 WL 3121891, at *7 (2d Cir. July 16, 2019) (quotation marks omitted).

As discussed below, the TAC pleads sufficient facts to make plausible Plaintiffs' contention that the Display Restriction violates the First Amendment. However, the record does not establish as a matter of law that the Display Restriction violates the First Amendment.

Accordingly, Defendants' motion to dismiss Count II of the TAC is denied, and Plaintiffs'

motion for summary judgment as to Count II is denied without prejudice to renewal.

### 1. Commercial Speech

The threshold issue is whether a merchant's physical display of ivory constitutes

commercial speech.  Commercial speech is "speech that does no more than propose a

commercial transaction."  *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (quoting *United States v.*

*United Foods, Inc.*, 533 U.S. 405, 415 (2001)); *accord Centro de la Comunidad Hispana de*

*Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 112 (2d Cir. 2017).

Because the in-store display of ivory products proposes a commercial transaction, such a

display constitutes commercial speech.  *See Second Amendment Arms v. City of Chicago*, 135 F.

Supp. 3d 743, 755 (N.D. Ill. 2015) ("Displaying a product for sale is a type of commercial

speech. . . ."); *see also Native Am. Arts, Inc. v. Waldron Corp.*, No. 01 Civ. 2370, 2004 WL

1687184, at *5 (N.D. Ill. July 23, 2004) ("To the extent that the packaging and displays of

Defendant's products may be commercial speech the regulation is also impermissible.").  *See*

*generally Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 568 (2001) (recognizing that self-

service tobacco displays have "some communicative commercial function").  Indeed,

Defendant's memorandum of law asserts that the display of products containing ivory suggests

the availability of the products for purchase.

Defendants question whether the display of goods for sale qualifies as commercial speech

and argue that "any First Amendment interest in the manner of display of goods for sale is

'attenuated,'" citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489,

496 (1982).  But the fact that a government entity may regulate the *manner* in which a merchant

displays a product does not mean that the display itself is not protected speech.  *Cf. Wandering*

*Dago, Inc. v. Destito*, 879 F.3d 20, 35 n.7 (2d Cir. 2018) (government entity "may place content-neutral restrictions on the time, place, and manner of" protected speech).

### 2. Lawful Activity

Although the First Amendment does not protect speech proposing a transaction that "*necessarily* constitute[s] an illegal act," if "there are plausible ways to complete a proposed transaction lawfully, speech proposing that transaction 'concerns lawful activity' and is therefore protected commercial speech." *Centro de la Comunidad Hispana*, 868 F.3d at 114. For example, in *Educational Media Company at Virginia Tech, Inc. v. Swecker*, 602 F.3d 583 (4th Cir. 2010), the Fourth Circuit held that the First Amendment protects alcohol advertisements published in "college student publications." *See id.* at 589. Although the advertisements were "*primarily* intended for underage students," they also reached some of-age readers, and thus concerned lawful activity for purposes of the *Central Hudson* test. *See id.*

The physical in-store display of ivory concerns lawful activity because it can propose a lawful interstate or foreign commercial transaction. It is plausible that an out-of-state customer could visit a New York antique store and subsequently purchase a product displayed at the store online or over the phone.[9] It is also plausible that an out-of-state customer could be unwilling to purchase certain ivory items without first inspecting them in person. Because the in-store display of ivory proposes plausible lawful transactions, such a display constitutes protected commercial speech. *Centro de la Comunidad Hispana*, 868 F.3d at 114.

---

[9] Intervenors argue that a merchant displaying an ivory object in New York, even to an out-of-state purchaser, "is still making an offer for sale *in New York*, and is therefore necessarily engaging in intrastate conduct that the [State] Ivory Law prohibits." This argument is unavailing. A physical display of ivory in New York can plausibly propose a lawful interstate transaction. The State Ivory Law's "offer for sale" prohibition does not make such transactions unlawful; Defendant has conceded that the State Ivory Law is preempted and will not be enforced with respect to interstate commerce.

### 3. Tailoring

The parties agree that New York has a substantial interest in regulating the sale of ivory within its borders and that the Display Restriction directly advances this interest, satisfying two requirements of *Central Hudson*. The only remaining question is whether the Display Restriction "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Vugo*, 2019 WL 3121891, at *12. Although the government -- here, DEC -- bears the burden of satisfying this prong of the *Central Hudson* test, it "may do so on a motion to dismiss if the [inquiry is] satisfied as a matter of law based on the facts pleaded in the Complaint." *Adirondack Advert., LLC v. City of Plattsburgh, N.Y.*, No. 12 Civ. 1684, 2013 WL 5463681, at *3 (N.D.N.Y. Sept. 30, 2013). "[T]he government must affirmatively establish a reasonable fit between the regulation and its goal," but need not show that the regulation is "the least restrictive means of advancing its asserted interests." *Vugo*, 2019 WL 3121891, at *12 (quotation marks and citations omitted). The government "is afforded considerable leeway in determining the appropriate means to further a legitimate government interest." *Id.* (quotation marks and citation omitted).

The TAC alleges that the European Decorative Arts Company ("EDAC") is authorized to sell its antique ivory items pursuant to a federal permit. EDAC's antique items include carved ivory figures, an ivory tankard and a wood and ivory sculpture by the artist Simon Troger. EDAC has lost revenue because out-of-state purchasers have refused to purchase certain antique ivory items "without first being able to physically inspect them." EDAC is not anomalous; the TAC alleges that other merchants also wish to display ivory in-store specifically for sale in interstate commerce, but fear criminal prosecution. One merchant has already been charged. Another merchant has ceased selling ivory in interstate commerce altogether.

Drawing all reasonable inferences in favor of Plaintiffs as the non-moving parties on the motion to dismiss, *see Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013), Defendant has not met his burden to establish, based on the facts pleaded in the TAC, *see Adirondack Advert.*, 2013 WL 5463681, at *3, that the Display Restriction does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Vugo*, 2019 WL 3121891, at *12. It is not enough to describe the State's aims and assert that the means it has selected to achieve those aims are reasonable; Defendant must affirmatively provide reasons, backed by facts, why that is so. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 648 (1985) ("[N]owhere does the State cite any evidence or authority of any kind for its contention that the potential abuses associated with the use of illustrations in attorneys' advertising cannot be combated by any means short of a blanket ban."); *cf. Vugo*, 2019 WL 3121891, at *13 (deferring to city's judgment regarding categorical advertising ban in light of record evidence). Defendant's contention that Plaintiffs' proposed alternative measures are insufficient lacks any basis in the facts alleged in the TAC.

Although the TAC is sufficient to state a First Amendment claim, Plaintiffs' motion for summary judgment on that claim is denied. No fact or expert discovery has taken place in this case. The record does not provide a sufficient basis for the Court to determine, on summary judgment, whether the Display Restriction "burden[s] substantially more speech than is necessary to further the government's legitimate interests." *Vugo*, 2019 WL 3121891, at *12. For example, the record evidence does not indicate the quantum of speech that is burdened, or the viability of less restrictive means[10] -- both of which bear on this inquiry. Further factual

---

[10] Although a regulation need not be "the least restrictive means of advancing [the government's] asserted interests," *Vugo*, 2019 WL 3121891, at *12, the availability of less restrictive means

development is required; potentially relevant evidence could include merchant communications with potential purchasers, sales records and/or the testimony of merchants and industry experts. The parties may also wish to supplement the record with evidence relating to the efficacy of other available means to deter intrastate ivory sales, which may bear on the reasonableness of the fit between the Display Restriction and the State's legitimate interests. *See Vugo*, 2019 WL 3121891, at *13.

## IV. CONCLUSION

For the foregoing reasons, Defendant's and Intervenors' cross-motions to dismiss the TAC are GRANTED with respect to the preemption claim and DENIED with respect to the First Amendment claim. Plaintiffs' motion for summary judgment is DENIED as moot with respect to the preemption claim and DENIED without prejudice to renewal with respect to the First Amendment claim.

Dated: August 14, 2019
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

plainly bears on whether a challenged regulation "burden[s] substantially more speech *than is necessary*." *See id.* (emphasis added).