UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
THE ART AND ANTIQUE DEALERS  :
LEAGUE OF AMERICA, INC., et al.,  :
                                        Plaintiffs,  :      18 Civ. 2504 (LGS)
                                                           :
                    -against-  :      **OPINION AND ORDER**
                                                           :
BASIL SEGGOS, et al.,  :
                                        Defendants.  X
------------------------------------------------------------

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs The Art and Antique Dealers League of America, Inc. (the "Dealers League") and The National Antique and Art Dealers Association of America, Inc. (the "Dealers Association") bring this action against Defendant Basil Seggos, the Commissioner of the New York State Department of Environmental Conservation ("DEC"). Plaintiffs challenge the constitutionality of the "State Ivory Law," New York State Environmental Conservation Law § 11-0535-a, and DEC licenses issued pursuant to that law. Plaintiffs move for summary judgment seeking (1) a declaratory judgment that the State Ivory Law is unconstitutional and therefore void and (2) a permanent injunction preventing DEC from enforcing the State Ivory Law. Defendant cross-moves for summary judgment seeking dismissal of this action in its entirety. For the reasons discussed below, Defendant's motion is granted, and Plaintiffs' motion is denied.

## I.   BACKGROUND

The summary below is taken from the Plaintiffs' Rule 56.1 statement as well as materials filed in support of the motions.[1]

### A. The Parties

Plaintiffs are trade organizations representing art and antique dealers.  Plaintiffs' members, some of whom have expertise in antique elephant and mammoth ivory from Africa and Asia, "have an economic and professional interest in, among other things, the purchase and sale of antique elephant ivory in interstate and international commerce."  Defendant is the Commissioner of the New York State DEC.

### B. State Ivory Law

In 2014, New York enacted the State Ivory Law, which provides that "no person shall sell, offer for sale, purchase, trade, barter or distribute an ivory article."  N.Y. Env't. Conserv. Law § 11-0535-a(2) (McKinney 2014).  The statute defines "ivory article" as "any item containing worked or raw ivory from any species of elephant or mammoth."  *Id.* § 11-0535-a(1)(b).  This prohibition is subject to various exceptions, *see id.* § 11-0535-a(3), which are more limited than the analogous exceptions to the ban on commerce in ivory outlined in the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. (the "ESA") -- the practical implication being

---

[1] Defendant seeks to preclude the declarations of Scott Defrin and Mark Schaffer because Plaintiffs did not disclose these fact witnesses in Plaintiffs' initial disclosures under Rule 26(a)(1) or subsequently under Rule 26(e).  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless.").  Plaintiffs argue that the failure to name Mr. Defrin and Mr. Schaffer was both harmless and substantially justified because those individuals were referenced in various Court filings and decisions.  The Court need not decide this issue because, even if the declarations of Mr. Defrin and Mr. Schaffer are considered, they would not defeat Defendant's motion for summary judgment.

that some ivory permitted to be sold interstate or internationally may not be sold intrastate in New York.  The DEC issues licenses that authorize trade in ivory pursuant to the State Ivory Law's exceptions.  *See id.* § 11-0535-a(3).  Trading in ivory without a license may constitute a Class D Felony and can carry substantial civil penalties.  *See id.* §§ 71-0924(4), 71-0925(16).  The licenses issued by DEC restrict the licensees' advertisement and display of ivory products.  Licensees may not "physically display for sale" any item not authorized for intrastate sale (i.e., not covered by one of the State Ivory Law's exceptions) (the "Display Restriction").  However, such items may be displayed in advertisements, catalogues and online, provided that the photographs are accompanied by a notice stating that the item "Cannot be [P]urchased or Sold within New York State."

The implementation of the Display Restriction has adversely affected Plaintiffs and their members.  For example, Anthony Blumka -- a member and officer of the Dealers Association who owns Blumka Gallery Ltd. -- has shipped all the ivory he owns overseas because of the Display Restriction.  In his declaration, Captain Antone Jess Paluch, an Investigative Captain of the DEC, stated that the State Ivory Law and the Display Restriction has made commerce in ivory in New York less appealing, and that the Display Restriction is operating as intended.  He explained that it is impossible to assess the genuineness or condition of ivory without inspecting it in person, and buyers of ivory of significant value are unwilling to make a purchase without an inspection.  Captain Paluch states that, as a result, the Display Restriction has made it more likely that sellers of ivory will comply with the State Ivory Law, because prospective buyers cannot inspect, and then immediately buy, ivory that is illegal for sale in New York.

### C. Procedural History

On March 20, 2018, Plaintiffs filed this action, challenging the constitutionality of the State Ivory Law on preemption and First Amendment grounds. Intervenor Defendants comprise The Humane Society of the United States, Center for Biological Diversity, Natural Resources Defense Council, Inc. and Wildlife Conservation Society.[2] On February 1, 2019, the Court granted Defendant's motion to dismiss for lack of subject matter jurisdiction for lack of standing. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, No. 18 Civ. 2504, 2019 WL 416330, at *1 (S.D.N.Y. Feb. 1, 2019). On March 19, 2019, Plaintiffs filed the Third Amended Complaint ("TAC"), which cured the standing deficiencies. On August 14, 2019, the Court granted in part and denied in part Defendant's and Intervenors' cross-motions to dismiss the TAC and denied without prejudice to renewal Plaintiffs' motion for summary judgment. *See Art & Antique Dealers League of Am., Inc. v. Seggos*, 394 F. Supp. 3d 447, 450 (S.D.N.Y. 2019). The parties have now completed discovery and their cross-motions for summary judgment are now before the Court.

## II. STANDARD

When parties cross-move for summary judgment, the Court analyzes the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict

---

[2] On July 9, 2018, the Court granted Intervenors' motion to intervene pursuant to Fed. R. Civ. P. 24.

for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When the movant properly supports its motions with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019) (internal quotations omitted).  "Only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013); *accord Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 323 (S.D.N.Y. 2019).  It is the government's burden to justify its rules as consistent with the First Amendment. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571-72 (2011).

### III.  DISCUSSION

#### A.  The Applicable Constitutional Standard

This dispute concerns New York's restriction of Plaintiffs' commercial speech -- "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980).  The parties do not dispute that the Display Restriction regulates commercial speech. *See Seggos*, 394 F. Supp 3d at 459 ("Because the in-store display of ivory products proposes a commercial transaction, such a display constitutes commercial speech.").  Under *Central Hudson*, the appropriate constitutional standard of review of commercial speech is intermediate scrutiny, even when the speech restrictions are content-based as they are here. *See Vugo, Inc. v. City of N.Y.*, 931 F.3d 42, 49 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2717 (2020).  In *Vugo*, the Second

Circuit expressly held "that the *Central Hudson* test still applies to commercial speech restrictions," and rejected a strict scrutiny standard even for commercial speech restrictions that are content-based. *Id*. at 49.[3]

Plaintiffs disagree and argue that, because the Display Restriction is content-based, it is subject to strict scrutiny even though it regulates commercial speech. Plaintiffs acknowledge that this is not the view of the Second Circuit Court of Appeals, whose holdings are binding on this Court. In their reply memorandum of law, Plaintiffs also suggest that the Supreme Court's recent plurality decision in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020), supports the application of strict scrutiny here. But the *Barr* plurality, in applying strict scrutiny, clarified that the ordinance before it was not purely commercial speech, distinguishing "impermissible content-based speech restrictions from traditional or ordinary economic regulation of commercial activity that imposes incidental burdens on speech," and stating, "[o]ur decision is not intended to expand existing First Amendment doctrine or otherwise affect traditional or ordinary economic regulation of commercial activity." *Id.* at 2347. In other words, *Barr* does not disturb the holding of *Central Hudson* that intermediate scrutiny applies to restrictions on commercial speech.

---

[3] *Accord In re Brunetti*, 877 F.3d 1330, 1350 (Fed. Cir. 2017) ("[P]urely commercial speech [is] reviewed according to the intermediate scrutiny framework established in *Central Hudson*."); *Retail Digit. Network, LLC v. Prieto*, 861 F.3d 839, 845-46 (9th Cir. 2017); *Flying Dog Brewery, LLP v. Mich. Liquor Control Comm'n*, 597 F. App'x 342, 365 (6th Cir. 2015) (Moore, J., concurring in part) ("[A]lthough *Sorrell* stated that 'heightened judicial scrutiny' applied, it reaffirmed the use of the *Central Hudson* test."); *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055 (8th Cir. 2014) (reasoning that the "upshot" of *Sorrell* is that "when a court determines commercial speech restrictions are content- or speaker-based, it should then assess their constitutionality under *Central Hudson*"); *see also Int'l Outdoor, Inc. v. City of Troy, Mich.*, 974 F.3d 690, 703, 706 (6th Cir. 2020) (holding that an ordinance regulating both commercial and non-commercial speech was subject to strict scrutiny).

6

The State Ivory Law engages in ordinary economic regulation of commercial activity -- the sale of ivory within the State of New York.  By prohibiting the in-store display of ivory that may not be sold intrastate, the Display Restriction imposes an incidental burden on "speech" -- i.e., the offering for sale of a product not permitted to be sold in New York.  *See Seggos*, 394 F. Supp. 3d at 459.

### B. Constitutionality of the Display Restriction

Under *Central Hudson*, intermediate scrutiny requires a court to determine whether "(1) the speech restrictions concern lawful activity; (2) the [State's] asserted interest is substantial; (3) the [restriction] 'directly advances' that interest; and (4) the [restriction] is no more extensive than necessary to serve that interest."  *See Vugo*, 931 F.3d at 51.  The parties agree that the Display Restriction satisfies the first three prongs of the *Central Hudson* test -- namely that the in-store display of ivory concerns lawful activity, New York has a substantial interest in regulating the sale of ivory within its borders and the Display Restriction serves that interest.  The fourth prong is disputed, but as explained below, the Display Restriction is no more extensive than necessary to serve New York's legitimate interest in regulating the sale of ivory.  Therefore, the Display Restriction's regulation of commercial speech is constitutional.

To evaluate whether a restriction is no more extensive than necessary to advance a governmental interest requires an evaluation of "the fit between the legislature's ends and the means chosen to accomplish those ends."  *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995).  That fit "is not necessarily perfect, but reasonable" and "represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective."  *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) (internal

quotations and citation omitted). Essentially, "the regulation [may] not burden substantially more speech than is necessary to further the government's legitimate interests." *Safelite Grp., Inc. v. Jepsen*, 764 F.3d 258, 265 (2d Cir. 2014). Litigants are permitted "to justify speech restrictions by reference to studies and anecdotes" or "based solely on history, consensus, and simple common sense." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001) (internal quotations omitted). Defendant on behalf of the DEC bears the burden of showing that the fourth *Central Hudson* prong is satisfied. *Long Is. Bd. of Realtors, Inc. v. Inc. Vil. of Massapequa Park*, 277 F.3d 622, 627 (2d Cir. 2002).

It is undisputed that the Display Restriction serves New York's interest of halting the illegal sale of ivory within its borders. The Display Restriction is narrowly tailored to serve New York's interest by keeping buyers from shopping for and physically inspecting ivory prohibited for sale in New York. The Display Restriction reduces the opportunity for, and temptation to engage in, a quick, illegal sale. Plaintiffs agree that preventing the display of ivory discourages its sale, as buyers are unlikely to purchase ivory that they have been unable to inspect in person. In *Lorillard Tobacco*, the Supreme Court similarly found that state regulations requiring retailers to place tobacco products behind counters served the state's interest "in preventing access to tobacco products by minors" and were "an appropriately narrow means of advancing that interest." 533 U.S. at 568-69.

The Display Restriction does not burden substantially more speech than necessary. The Display Restriction is not a regulation that acts as a complete ban on the advertisement of ivory, only indirectly advances New York's interest, or otherwise prohibits more speech than its goal would warrant. *See, e.g.*, *Sorrell*, 564 U.S. at 576-77 (attempting to promote public health by influencing doctors' prescription decisions cannot be accomplished in an indirect manner by

8

restraining the speech of pharmaceutical marketers); *Lorillard Tobacco Co.*, 533 U.S. at 561-62 (finding that a ban on advertising for certain tobacco products within 1,000 feet of a school or playground would effectively "constitute nearly a complete ban on the communication of truthful information" about the products). Because ivory sellers are permitted many alternative avenues to market ivory permitted for sale only interstate or internationally, including in printed advertisements, catalogs, or online, the Display Restriction is not overly broad. Prospective buyers of ivory may express an interest in ivory after viewing it via these alternative avenues and then, if they wish, physically inspect the ivory outside of New York. *See Lorillard Tobacco Co.*, 533 U.S. at 570 (permitting government regulation of the display of products because the law left "open alternative avenues for vendors to convey information about products").

Plaintiffs make three arguments why the Display Restriction cannot satisfy the fourth prong of *Central Hudson*. None is persuasive. First, Plaintiffs argue that the DEC did not conduct any studies or reports regarding the effectiveness of the Display Restriction or whether other less restrictive alternatives would also accomplish New York's interest. However, New York is not required to produce "empirical data . . . accompanied by a surfeit of background information." *Lorillard Tobacco Co.*, 533 U.S. at 555 (citing *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 628 (1995)). New York has satisfied its burden and is not required to show that there is "no conceivable alternative" to advance its goals. *See Safelite Grp. Inc.*, 764 F.3d at 265; *Boelter v. Hearst Commc'ns, Inc.* 192 F. Supp. 3d 427, 450-51 (S.D.N.Y. 2016) (explaining that when furthering a legitimate state interest, a state "need not use the least restrictive means, nor must it select the very best alternative."). The record includes evidence that, since the passage of the State Ivory Law in 2014, the amount of commerce in ivory in New York State and the display of ivory has dramatically decreased; Defendant cites a study from 2016, two years after

the adoption of the Ivory Law in 2014, showing that the number of ivory items displayed for sale in New York City had fallen from over 11,000 in 2006 to 224 in 2016.  Consistent with that finding is the testimony of Mr. Blumka, one of the Plaintiffs' members, that he shipped ivory out of New York because of the State Ivory Law and the Display Restriction, thus illustrating that the Display Restriction has its intended effect.

Second, Plaintiffs cite the Second Circuit's decision in *Bad Frog Brewery v. N.Y. State Liquor Auth.* for the proposition that a regulation that does not advance the state's interest and for which there are numerous less restrictive and equally effective measures cannot withstand intermediate scrutiny.  134 F.3d 87, 100-01 (2d Cir. 1998).  *Bad Frog Brewery* is inapplicable here because the Display Restriction directly advances New York's interest by reducing the presence of prohibited ivory in New York and making the illegal sale of prohibited ivory more difficult and thus less likely.  Plaintiffs propose an alternative approach termed "Segregation and Labeling," which they assert is less restrictive and would still advance New York's interest. "Segregation and Labeling" would require stores to display separately ivory permitted for sale only in interstate or international commerce with a label stating that restriction.  This approach is less effective than the Display Restriction in deterring an immediate illegal sale because it still allows the seller, the possible buyer and the prohibited ivory to be together in one place.  Captain Paluch described, for example, his undercover purchase of prohibited ivory in New York City when the prohibited ivory was located separately in a glass case bearing a sign stating, "Ivory not for sale."  The record does not show that "Segregation and Labeling" advances the State's interest as effectively as the Display Restriction.

Finally, Plaintiffs argue that there is no evidence that the Display Restriction aids law enforcement, that allowing the physical display of ivory harms law enforcement, or that

10

exempting photographs or images from the Display Restriction helps enforce the State Ivory Law.  Plaintiffs' first two points rely, in part, on the fact that DEC agents rely on on-site physical inspection of ivory to determine whether it is being unlawfully sold.  However, the State's interest underlying the Ivory Law is neither the inspection of ivory nor the prosecution of wrongdoers as an end in itself, but the prevention of ivory's illegal sale.  Plaintiffs' arguments are unpersuasive in showing that the Display Restriction is more extensive than necessary to serve New York's interest.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is DENIED and Defendants' motion for summary judgment is GRANTED.

The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: March 5, 2021
　　　　New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**